## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**FERNANDA S. KING,**

    **Plaintiff,**                              **CASE NO.:**

  **vs.**

**EXPERIAN INFORMATION SOLUTIONS, INC.,**
**a foreign for-profit corporation,**
**EQUIFAX INFORMATION SERVICES, LLC,**
**a foreign limited liability company, TRANS UNION, LLC,**
**a foreign limited liability company and**
**LOBEL FINANCIAL CORPORATION,**
**a foreign for-profit corporation.**

    **Defendants.**

_____/

COMES NOW Plaintiff, Fernanda S. King, ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants, Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("TransUnion") and Lobel Financial Corporation ("Lobel").

## <u>INTRODUCTION</u>

1.    Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by Defendants, Experian, Equifax, TransUnion and Lobel. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer

1

reports, failed to conduct reasonable investigations of her disputes and consequently reported inaccurate information about Plaintiff following her bankruptcy discharge.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, because Plaintiff alleges violation of the FCRA, a federal law. 15 U.S.C. 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.    Venue in the Middle District of Florida is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.    Plaintiff is a natural person who resides in Duval County, Florida.

5.    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

6.    Defendant Experian is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties. Experian can be served at its headquarters located at 475 Anton Boulevard,

2

Costa Mesa, CA 92626.

7.    Defendant TransUnion is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties. TransUnion's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661.

8.    Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f).  On information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

9.    Defendant Lobel is a corporation with its principal place of business located at 1150 N Magnolia Ave, Anaheim, CA 92801 which conducts business in the State of Florida.

10.    Defendant Lobel regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is, therefore, a *furnisher* as that term is used in 15 U.S.C. § 1681s-2.

11.    During all times pertinent to this Complaint, Defendants were  authorized

3

to conduct business in the State of Florida and conducted business in  Florida on a routine and systematic basis.

12.    Defendants, Experian, Equifax and TransUnion regularly engage in the business of assembling,  evaluating, and disbursing information concerning consumers for the purpose of  furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties.   Defendants, Experian, Equifax and TransUnion regularly furnish consumer reports to third parties for monetary  compensation, fees and other dues, using means and facilities of interstate commerce, and each is therefore a "consumer reporting agency," as defined by 15  U.S.C. §1681a(f) of the FCRA.

13.    During all times pertinent to this Complaint, Defendants acted through their authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14.    Any violation by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures  reasonably adapted to avoid any such violation.

## RELEVANT FACTUAL BACKGROUND
## AS TO CREDIT REPORTING AGENCIES

15.    The credit reporting agency Defendants Equifax, Experian and TransUnion report consumer information about Plaintiff and other  consumers through the sale of consumer reports (credit reports).

4

16.    Defendants' credit reports generally contain the following  information: (i) Header/Identifying Information: this section generally includes the  consumer's name, current and prior addresses, date of birth, and phone numbers;  (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17.    Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be  independently gathered by Defendants, or acquired from third party providers/vendors or repositories, including computerized reporting services like PACER.

18.    The information Defendants include in a credit report contributes to a consumer's creditworthiness and determines their FICO Scores.

19.    The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon credit reports from the CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores and other

proprietary third-party algorithms – "scoring" models – to interpret the information in a consumer's credit report.

20.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's credit report to calculate a "credit score," which is a direct reflection of a consumer creditworthiness to future potential creditors.

21.    FICO Scores factor the following credit report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

22.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be. However, once a delinquent account has been remedied and the longer the account stays current, the more a consumer's FICO Score should increase.

23.    The "amount of debt owed" is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a CRA creates an impression that the Amount of currently owed debts is higher than it actually is, thereby impacting a consumer's credit score.

24.    Lenders also consider a consumer's debt-to-income ratio (DTI) based on the

6

total amount of debt reported by Defendants in consumer credit reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

25.    A consumer's income, however, is not included in their credit report; only their amount of debt is.

26.    Lenders consider a consumer's DTI as an indicator of whether a creditor will approve financing and the credit terms thereof.

27.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

28.    Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a credit report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than someone without a bankruptcy discharge.

29.    Defendants, Experian, Equifax and TransUnion generally obtain and report Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer credit report, as well as the individual account tradelines.

30.    Defendants had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendants reported Plaintiff's bankruptcy

filing and/or discharge in the public record section of their credit reports, as well as in individual account tradelines.

31.    Defendants are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged; both such exceptions are rare and furthermore identified on the individual consumer's bankruptcy docket sheet.

32.    Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding can be retrieved from the same sources from which Defendants voluntarily obtained the consumer's bankruptcy case information.

33.    Defendants can also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

34.    However, Defendants regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

35.    Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts without supporting evidence.

36.    In fact, Defendants often publish consumer information that conflicts with the information included in their credit files, contained in public records, or

provided by data furnishers.

37.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate reporting following a Chapter 7 discharge.

38.    Therefore, Defendants are on continued notice of their inadequate  post-bankruptcy reporting procedures, which often produce inaccurate balances, account and payment statuses.

### Plaintiff's Chapter 7 Bankruptcy

39.    Plaintiff filed for a voluntary Chapter 7 Bankruptcy on or about October 9, 2023  in the United States Bankruptcy Court for the Middle District of Florida, case no 3:23-bk-02414-JAF.

40.    There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

41.    In addition, Plaintiff did not enter any reaffirmation agreements during the pendency of her bankruptcy.

42.    Accordingly, Plaintiff received an Order of Discharge signed by United States Bankruptcy Judge, Jerry A. Funk, discharging her personal liability on the

dischargeable debts on February 5, 2024.

## After Bankruptcy Discharge

43.   Plaintiff was eager to begin working on improving her credit following her bankruptcy and obtaining her "fresh start."

44.   Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendants, Experian, TransUnion and Equifax prepared one or more credit reports concerning Plaintiff.

45.   Defendants Experian and TransUnion reported Plaintiff's Chapter 7 Bankruptcy case information, including the reference number, court, filing date, and discharge.

46.   However, Defendant Equifax did <u>not</u> report Plaintiff's Chapter 7 Bankruptcy case information in it's credit reports after Plaintiff's Bankruptcy.  As shown below in *Section 9* of Plaintiff's July 23, 2024, Equifax's report stated, "You currently do not have any Bankruptcies in your file."

### 9. Public Records

This section includes public record items Equifax obtained from local, state and federal courts through a third party vendor, LexisNexis. They can be contacted at: https://equifaxconsumers.lexisnexis.com

LexisNexis Consumer Center
P.O. Box 105615
Atlanta, GA 30348-5108

#### Bankruptcies

Bankruptcies are a legal status granted by a federal court that indicates you are unable to pay off outstanding debt. Bankruptcies stay on your credit report for up to 10 years, depending on the chapter of bankruptcy you file for. They generally have a negative impact on your credit score.

You currently do not have any Bankruptcies in your file.

10

47.    Defendants Experian, TransUnion and Equifax, also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

48.    For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendants Experian, TransUnion, and Equifax, are generally required to report the status of these  debts as discharged through bankruptcy, unless the furnishers provide information  showing that a debt was excludable from discharge.

49.    After the bankruptcy discharge, Experian, TransUnion and Equifax reported Plaintiff's Lobel Account that was opened prior to Plaintiff's bankruptcy as still open and owing a balance after the bankruptcy discharge.

50.    Defendants Experian and TransUnion were not reporting any other pre-bankruptcy debts with a balance; therefore, Experian and TransUnion had notice that Plaintiff could not owe debt on an account that was opened before her bankruptcy was filed.

51.    Despite the bankruptcy discharge, Equifax also reported her Lobel Account as still open and owing balances after the discharge and additionally reported debts owed to Comenity Bank/Victoria Secret, Jacksonville Electric Authority, and Vystar as charge offs with balances.

52.   As of July 23, 2023, all three Credit Bureau Defendants, Experian, TransUnion and Equifax were reporting that Plaintiff owed debts for which she was no longer liable, thereby damaging her credit scores.

53.   Defendant Lobel (the "Lobel Account," # 4143) was inadvertently not listed in Plaintiff's bankruptcy schedules, however, it was still discharged as the debt was incurred over five months prior to the Plaintiff filing bankruptcy.

54.   Experian, despite disclosing Plaintiff's bankruptcy under the Public Record section of its consumer report (Report Number: 3117-9382-73) along with the date of filing, date of discharge and case number continued to list the Lobel Account as open with a balance owed.

55.   TransUnion, despite disclosing Plaintiff's bankruptcy under the Public Record section of its consumer report (File Number: 450393702) along with the date of filing, date of discharge and case number, continued to list the Lobel Account with a balance owed of $19,537.

56.   Equifax also continued to report the Lobel Account as open with a balance owed of $19,990 and additionally reported three other discharged accounts as charge-offs with a balance owed:

      a.  Comenity Bank/Victoria Secret Account (#8966)

      b.  Jacksonville Electric Authority Account (#3298)

      c.  Vystar Account (#4892).

## PLAINTIFF'S DISPUTES

### First Dispute to Equifax, Experian and TransUnion

57.   On August 29, 2024, Plaintiff sent  dispute letters via certified mail to Equifax, Experian and TransUnion concerning inaccurate information regarding reporting her accounts that had been discharged in bankruptcy.

58.   After receiving Plaintiff's dispute on September 5, 2024, upon information and belief, Defendant Equifax failed to properly correct the accounts to properly reflect the reality of Plaintiff's situation and of the federal court record.

59.   After receiving her September 2024 dispute, upon information and belief, Defendant Equifax properly contacted Lobel, Comenity Bank/Victoria Secret, Jacksonville Electric Authority, and Vystar but failed to properly correct the accounts as discharged in bankruptcy. Additionally, Equifax failed to correct its Public Record disclosure regarding her bankruptcy and still claimed she had not filed bankruptcy.

60.   Further, after receiving Plaintiff's September 2024 dispute letter, Equifax, had enough information available to it, based on the underlying bankruptcy record and documentation, to confirm that the balances were *not* verifiable. This inability to verify the balance or status of the bankruptcy, and yet still confirm it in "maximum accuracy" is a violation of the Fair Credit Reporting Act and the Plaintiff's rights regarding her consumer report.

61.   After receiving Plaintiff's dispute on September 5, 2024, upon information

and belief, Defendant Experian failed to properly correct the accounts to properly reflect the reality of Plaintiff's situation and of the federal court record.

62. After receiving her dispute, upon information and belief, Defendant Experian properly contacted Lobel but failed to properly correct the account as discharged in bankruptcy.

63. Further, after receiving Plaintiff's dispute letter, Experian, had enough information available to it, based on the underlying bankruptcy record and documentation, to confirm that the balances were *not* verifiable. This inability to verify the balance or status of the bankruptcy, and yet still confirm it in "maximum accuracy" is a violation of the Fair Credit Reporting Act and the Plaintiff's rights regarding her consumer report.

64. After receiving Plaintiff's dispute on September 4, 2024, upon information and belief, Defendant TransUnion failed to properly correct the accounts to properly reflect the reality of Plaintiff's situation and of the federal court record.

65. After receiving her dispute, upon information and belief, Defendant TransUnion properly contacted Lobel but failed to properly correct the account as discharged in bankruptcy.

66. Further, after receiving Plaintiff's dispute letter, TransUnion, had enough information available to it, based on the underlying bankruptcy record and documentation, to confirm that the balances were *not* verifiable. This inability to verify the balance or status of the bankruptcy, and yet still confirm it in "maximum

accuracy" is a violation of the Fair Credit Reporting Act and the Plaintiff's rights regarding her consumer report.

67.    After receiving her dispute letters, Defendants failed to update the credit report to properly reflect the reality of Plaintiff's situation and of the federal court record.

68.    After receiving Plaintiff's dispute letter, upon information and belief, Defendants failed to conduct a reasonable investigation of the accounts.

69.    Further, after receiving Plaintiff's dispute letter, Defendants Equifax, Experian and TransUnion had enough information available to them, based on the underlying bankruptcy record and documentation, to confirm that the balance was *not* verifiable. This inability to verify the balance or status of the bankruptcy, and yet still confirm it in "maximum accuracy" is a violation of the Fair Credit Reporting Act and the Plaintiff's rights regarding her consumer report.

70.    As of October 22, 2024, neither Experian, TransUnion nor Equifax had corrected the disputed debts that were incurred before filing of the Plaintiff's bankruptcy on its reports.

71.    On December 14, 2024, Plaintiff's Experian report showed that the Lobel Financial Account was now correctly reporting closed and with a status of discharged through Bankruptcy Chapter 7/Never late.

### Second Disputes to Equifax and TransUnion

72.    On or about December 13, 2024, Plaintiff sent another dispute letter to

Equifax concerning providing inaccurate information regarding reporting accounts that had been discharged in bankruptcy, specifically, Lobel, Comenity Bank/Victoria Secret, Vystar Credit Union and Jacksonville Electric Authority.

73.    After receiving Plaintiff's December 2024 dispute, upon information and belief, Defendant Equifax failed to properly correct the accounts to properly reflect the reality of Plaintiff's situation and of the federal court record.

74.    After receiving her dispute, upon information and belief, Defendant Equifax properly contacted Lobel, Comenity Bank/Victoria Secret, Jacksonville Electric Authority, and Vystar but failed to properly correct the accounts as discharged in bankruptcy. Additionally, Equifax failed to correct its public record disclosure regarding her bankruptcy and still claimed she had not filed bankruptcy.

## Third Dispute

75.    On January 3, 2025, Plaintiff telephoned TransUnion and disputed the Lobel Account and explained it was included in her bankruptcy. TransUnion told her that it would investigate the Lobel account again.

76.    On January 7, 2025, frustrated by Equifax's refusal to acknowledge her bankruptcy, Plaintiff telephoned Equifax and spoke to a dispute agent and explained her situation and the continued reporting of discharged accounts as delinquent. The Equifax agent told Plaintiff that they had no knowledge of her bankruptcy.

77.    Further, after receiving Plaintiff's telephone dispute, Equifax, had enough

information available to it, based on the underlying bankruptcy record and documentation, to confirm that the balances were *not* verifiable. This inability to verify the balance or status of the bankruptcy, and yet still confirm it in "maximum accuracy" is a violation of the Fair Credit Reporting Act and the Plaintiff's rights regarding her consumer report.

### Lobel Finance

78.    Plaintiff entered into an auto loan with Lobel Finance on May 13, 2023 which was incurred over five months prior to filing her Chapter 7 bankruptcy case on October 9, 2023.

79.    Plaintiff made multiple disputes to Experian, TransUnion and Equifax concerning inaccurate information regarding reporting the Lobel account that had been discharged in bankruptcy. After receiving her disputes, upon information and belief, Defendant TransUnion, Experian and Equifax properly contacted Lobel but Lobel failed to conduct a reasonable investigation and  properly correct the account as discharged in bankruptcy.

80.    Defendants inaccurately reported the status of the debts after discharge even though the debts are in fact discharged, Plaintiff is no longer personally liable for the prefiling debt, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7  Bankruptcy discharge.

81.    Consequently, Plaintiff suffered damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)
### as to Experian and TransUnion

82.    Plaintiff incorporates herein by reference paragraphs 1-81 of this Complaint as though fully set forth herein at length.

83.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

84.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

85.    The FCRA requires consumer reporting agencies like Defendants to follow

reasonable procedures to assure maximum possible accuracy of consumer information.

86.    Defendants Experian and TransUnion, negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

87.    Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information and possess information establishing that the reported information is in fact inaccurate.

88.    Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures.

89.    Defendants have obtained or have available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

90.    Defendants are well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

91.    Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports they sell to other parties.

92.    Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge to report this information in their consumer credit reports.

93.    The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

94.    Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and therefore deprived Plaintiff of her rights under the FCRA.

95.    Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

96.    Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the date the consumer

filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

97.    Defendants are also on notice from other account tradelines reported by Defendants that indicate those accounts were included in/or discharged in bankruptcy.

98.    Defendants are well aware that a discharged debt should not be reported with an outstanding balance after the debt is discharged.

99.    In this case, the inaccurately reported debt, Lobel pertains to a debt that Defendants knew predated Plaintiff's Chapter 7 Bankruptcy, was included and discharged by Plaintiff's bankruptcy discharge, and should therefore have been reported with a zero balance.

100.    Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

101.    Plaintiff has suffered damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

102.    Defendants' actions are a direct and proximate cause, as well as a substantial factor in causing Plaintiff's damages.

103.   Defendants Experian and TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance — or both — with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT II
### Violations of the FCRA, 15 U.S.C. § 1681e(b)
### as to Equifax

104.   Plaintiff incorporates herein by reference paragraphs 1-81 of this Complaint as though fully set forth herein at length.

105.   The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

106.   Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

107.   The FCRA requires consumer reporting agencies like Defendants to follow

reasonable procedures to assure maximum possible accuracy of consumer information.

108. Defendant Equifax, negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

109. Consequently, Defendant routinely reported inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possess' information inconsistent with the reported information and possess' information establishing that the reported information is in fact inaccurate.

110. Defendant knew or should have known of its obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures.

111. Defendant has obtained or has available substantial written materials that apprised Defendant of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

112. Defendant is well aware that the effect of a discharge Order in a no asset

Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

113. Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the credit reports they sell to other parties.

114. Defendant voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge and yet Defendant Equifax repeatedly _failed_ to report this information in its consumer credit reports.

115. Despite knowledge of these legal obligations, Defendant acted willfully in consciously breaching known duties and therefore deprived Plaintiff of her rights under the FCRA.

116. Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

117. Defendant possesses information from which Defendant should know the reported information is inaccurate.

118. The other two major credit reporting agencies, Experian and TransUnion, all reported Plaintiff's bankruptcy filing.

119. Defendants are well aware that a discharged debt should not be reported

24

with an outstanding balance after the debt is discharged.

120.   In this case, the inaccurately reported debts Lobel, Comenity Bank/Victoria Secret, Jacksonville Electric Authority and Vystar Account pertains to debts that Defendants knew predated Plaintiff's Chapter 7 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported with a zero balance.

121. Alternatively, Defendant was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

122. Plaintiff has suffered damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

123.   Defendant's actions are a direct and proximate cause, as well as a substantial factor in causing Plaintiff's damages.

124. Defendant's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT III

## CLAIMS AGAINST DEFENDANT EQUIFAX

*Violations of the FCRA 15 U.S.C. § 1681 et seq. as to*
*Reinvestigation of Lobel, Comenity Bank/Victoria Secret,*
*Jacksonville Electric Authority and Vystar*

125.  Plaintiff incorporates paragraphs 1 to 81 as though set forth herein.

126.  Equifax willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

127.  Equifax willfully and/or negligently ignored the information provided to it by Plaintiff and by the results of the other account investigations.

128.  Equifax willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report and the errors stated.

129.  Equifax willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

130.  Equifax willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

131.  Equifax negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

132.  Equifax willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

133.  In response to the request for reinvestigation, Equifax improperly verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

134.  Equifax has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i.

135.   As noted above, Equifax failed to conduct a proper investigation by wholly ignoring the plain language of Plaintiff's disputes and the attached documentation.

136.   Equifax's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

137.   Equifax's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

<u>**COUNT IV**</u>
<u>**CLAIMS AGAINST EXPERIAN**</u>
<u>*Violations of the FCRA 15 U.S.C. § 1681 et seq.*</u>
<u>*(Reinvestigation of Lobel)*</u>

138.   Plaintiff incorporates paragraphs 1 to 81 as though set forth herein.

139.   Experian willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

140.   Experian willfully and/or negligently ignored the information provided to it by Plaintiff and by the results of the other account investigations.

141.   Experian willfully and/or negligently refused to properly reinvestigate

Plaintiff's consumer report and the errors stated.

142.  Experian willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

143.  Experian willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

144.  Experian negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

145.  Experian willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

146.   In response to the request for reinvestigation, Equifax improperly verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

147.  Experian has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i.

148.  As noted above, Experian failed to conduct a proper investigation by wholly ignoring the plain language of Plaintiff's disputes and the attached documentation.

149.  Experian's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

150.   Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and

entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT V
### CLAIMS AGAINST TRANSUNION
### Violations of the FCRA 15 U.S.C. § 1681 *et seq.*
### (Reinvestigation of Lobel)

151.    Plaintiff incorporates paragraphs 1 to 81 as though set forth herein.

152.    TransUnion willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

153.    TransUnion willfully and/or negligently ignored the information provided to it by Plaintiff and by the results of the other account investigations.

154.    TransUnion willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report and the errors stated.

155.    TransUnion willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

156.    TransUnion willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

157.    TransUnion negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

158.    TransUnion willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

159.    In response to the request for reinvestigation, Equifax improperly verified the trade lines as correct, and refused to remove the inaccurate information, in

violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

160.  TransUnion has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i.

161.  As noted above, TransUnion failed to conduct a proper investigation by wholly ignoring the plain language of Plaintiff's disputes and the attached documentation.

162.  TransUnion's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

163.  TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT VI
### CLAIMS AGAINST DEFENDANT LOBEL
*Violations of the FCRA*
*15 U.S.C. § 1681s-2(b)  (Investigation)*

164.  Plaintiff incorporates Paragraph 1-81 above as if fully stated herein.

165.  Lobel has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA, 15 U.S.C. § 1681s-

2(b).

166.   Specifically, Lobel violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of disputed information, by failing to review all relevant information provided by the consumer reporting agency, by failing to review Plaintiff's bankruptcy information and docket, the documentation provided, the direct dispute from Plaintiff, and its own entire file as part of such investigation, by failing to accurately communicate the results of its investigation to the consumer reporting agencies, by verifying inaccurate or incomplete information to a consumer reporting agency as part of a reinvestigation of such information disputed by Plaintiff and/or by verifying and continuing to report inaccurate information after notice and confirmation of those errors.

167.   Further, Lobel violated 15 U.S.C. § 1681s-2(b) by failing to promptly modify, delete or permanently block information disputed by Plaintiff which it knew or reasonably should have known was inaccurate, obsolete and/or incomplete.

168.   Following the reinvestigation and notice to Lobel via the consumer reporting agencies to whom it reported credit information that the debt was disputed, in violation of the FCRA, 15 U.S.C. §§ 1681s-2(b) the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(3).

169.   Lobel's reinvestigation was not conducted in good faith.

170.   Lobel's reinvestigation was not conducted reasonably.

171.   Lobel's reinvestigation was not conducted using all information

reasonably available to the Defendant.

172.   Lobel's reinvestigation was per se deficient by reason of these failures in its reinvestigation of the trade line on Plaintiff's consumer report in light of information it already had.

173.  Lobel's actions in violating the FCRA, 15 U.S.C. § 1681s-2(b) constituted willful and/or negligent noncompliance with the FCRA, and entitles Plaintiff to actual damages enumerated in 15 U.S.C. § 1681o and/or 15 U.S.C. § 1681n.

174.  Defendant has violated 15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate").

175.  Despite having all the information available to it after multiple disputes from Equifax, Experian, and TransUnion, the Lobel continued to report inaccurate and harmful information in violation of 15 U.S.C. § 1681s-2(a)(1)(A).

176.   As a result of Lobel's conduct, actions, and inactions, Plaintiff has suffered emotional distress, humiliation, mental anguish and damages to her creditworthiness.

177.  Lobel's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n

or 1681o, or both.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Fernanda S. King, respectfully requests judgment be entered against Defendants, Experian, TransUnion, Equifax and Lobel, for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

## Designation of Lead Counsel Pursuant to Local Rule 2.02(a)

Pursuant to Local Rule 2.02(a) of the Middle District of Florida, the undersigned **Max Story, Esquire** is designated as lead counsel in this case.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Dated this 24th day of February, 2025

STORY LAW GROUP

/s/ Max Story
Max Story, Esq.
Florida Bar No.: 527238
James Tyer No.: 1018238
Florida Bar No.:
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL 32250
Telephone: (904) 372-4109
max@storylawgroup.com
james@storylawgroup.com
Attorneys for Plaintiff